IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**DAVID SANDERS**                                                                                     **PLAINTIFF**

**V.**                                                           **CAUSE NO. 3:10-CV-00606-CWR-LRA**

**SAILORMEN, INC.**                                                             **DEFENDANT**

**ORDER GRANTING SUMMARY JUDGMENT**

The above-styled matter is before the Court on the motion for summary judgment[1] of Sailormen, Inc. The Court has reviewed the arguments contained therein, as well as those presented by the plaintiff's response thereto, and after due deliberation has concluded that the motion must be granted.

**FACTUAL BACKGROUND**

David Sanders was a maintenance technician who, from 2003 to December 2009, worked for Sailormen, Inc., which owns several Popeye's restaurants in Mississippi.[2] In September 2009, Sanders filed a charge against Sailormen with the Equal Employment Opportunity Commission in which Sanders alleged that he was being paid less than similarly situated white employees.[3] After a mediation conducted by the EEOC in October 2009, Sanders received a pay increase from $12 per hour to $18.50 per hour; however, Sanders did not withdraw his EEOC complaint.[4]

---

[1] Defendant's Motion for Summary Judgment [Docket No. 34].

[2] Complaint [Docket No. 1] at ¶3.

[3] Complaint at ¶8.

[4] Plaintiff's Response to Sailormen, Inc.'s Motion for Summary Judgment [Docket No. 38] (hereinafter "Plaintiff's Brief") at 3.

According to Sailormen, it received a report on November 7, 2009, that a customer had seen Sanders smoking behind a Popeye's restaurant and that the smoke had smelled like marijuana.[5] At the behest of Abbas Momenzadeh, Sailormen's vice president of operations, Sanders was required to submit to a drug test on November 8, 2009.[6] The test returned a positive indication of marijuana, and on November 19, 2009, Momenzadeh met with Sanders to inform him of the result.[7]

Sailormen maintains a Drug Free Workplace Policy for Employees[8] which establishes, among other things, the following regarding drug tests:

> EMPLOYER'S ACTIONS WHEN A TEST IS CONFIRMED POSITIVE BY [Medical Review Officer]
>
> The Company will take the following actions for any employee receiving a test for alcohol or drugs that is confirmed positive by the MRO [*sic*] will notify the employee in writing as follows:
>
> Thirty (30) Day Suspension without Pay
>
> Any employee who tests positive will be immediately removed from duty and –
> - Be suspended without pay for a period of 30 days
> - Be referred to a substance abuse professional for assessment and recommendations
> - Be required to successfully complete recommended rehabilitation including continuing care
> - Be required to pass a Return-to-Duty test and sign a Return-to-Work Agreement
> - Be subject to ongoing, unannounced, follow-up testing for a period

---

[5] Defendant's Memorandum in Support of Motion for Summary Judgment [Docket No. 35] (hereinafter "Defendant's Brief") at 7.

[6] Defendant's Brief at 7.

[7] Plaintiff's Brief at 3.

[8] Exhibit 2A to Plaintiff's Brief [Docket No. 38-5].

> > of five years
> > - Be terminated immediately if he/she tests positive for a second time or violates the Return-to-Work Agreement.
>
> The cost of all such counseling, rehabilitation and testing will be solely borne by the employee.
>
> Employee's failure to attend or document counseling sessions, failure to successfully complete counseling during the 30 days above and failure of any follow up testing will result in immediate cancellation of employees [sic] right to return to work and cancel all other employee agreements with Company whether oral or in writing.[9]

At the time Sanders was informed of the test's results, he signed an Employee Return to Work Agreement, in which Sanders affixed his signature to the following provision:

> I David Sanders accept the terms of this letter and hereby agree to the 30 day suspension and counseling as defined in the Company's Drug Free Workplace Policy Manual. *I understand that the company is under no obligation to reinstate my employment* but at the company's option I may be re-hired with proof that I have successfully completed professional counseling and have passed a follow-up drug test (Proof of test must be provided). Re-hiring is also subject to acceptance of Employee Return to Work Agreement.[10]

According to Sailormen, the Employee Return to Work Agreement established that "[i]f Sanders could provide clean results from a follow-up drug test *within* that thirty day period, he would be eligible for reinstatement."[11] Sanders offers a different interpretation, though: namely, that "[n]othing in the return-to-work agreement (*or anywhere in the policy*) required the plaintiff to return the second test results *within* 30 days."[12]

---

[9] Exhibit 2A to Plaintiff's Brief at 10.

[10] Exhibit 11 to Motion for Summary Judgment [Docket No. 34-13] at 2 (emphasis added).

[11] Defendant's Brief at 8 (emphasis added).

[12] Plaintiff's Brief at 6 (emphasis in original).

On December 21, 2009, which was 32 days after the November 19 suspension, Sanders submitted to another drug test, which indicated negative for the presence of marijuana.[13] Two days later, Sanders submitted the test results to his district manager, but roughly a week later, Sanders was informed by Sailormen's home office that he was being terminated for failing to complete a drug rehabilitation program.[14]

After receiving a right-to-sue letter from the EEOC,[15] Sanders filed suit against Sailormen on October 22, 2010. Sanders alleged that Sailormen (1.) violated Title VII "by paying the plaintiff less than similarly situated white employees," (2.) violated Title VII "by terminating the plaintiff in retaliation for the plaintiff having filed an EEOC [*sic*]," (3.) violated Title 42, Section 1981 of the United States Code "by paying the plaintiff less than similarly situated white employees," and (4.) violated Section 1981 "by terminating the plaintiff in retaliation for the plaintiff having filed an EEOC [*sic*] and having complained about discriminatory pay."[16]

Sailormen moved for summary judgment on November 18, 2011.

## STANDARD OF REVIEW

Although motions for summary judgment are filed frequently, not every case is suitable for that disposition. Summary judgment is appropriate only if "particular parts of the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory

---

[13] Plaintiff's Brief at 4.

[14] Plaintiff's Brief at 4.

[15] Complaint at ¶12.

[16] Complaint at ¶14.

answers, or other materials,"[17] "show[ ] that there is no genuine dispute as to any material fact . . . ."[18]

When confronted with these motions, this Court focuses on "genuine" issues of "material" facts. An issue is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgement, together with an inference in such party's favor that the evidence allows would be sufficient to support a verdict in favor of the party."[19] A fact is material if it is one which might affect the outcome of the suit under the governing law.[20] Factual disputes that are irrelevant or unnecessary will not be considered.[21] Likewise, unsubstantiated assertions are not competent summary judgment evidence.[22] And "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."[23]

The jury has the ultimate responsibility to assess the probative value of the evidence. As a consequence, a court must step back and refrain from making credibility determinations, and it

---

[17] Fed. R. Civ. P. 56(c)(1)(A)

[18] Fed. R. Civ. P. 56(a).

[19] *Zisman v. Mason*, 2008 WL 879726, *3 (S.D. Miss. 2008) (citing *Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987).

[20] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[21] *Id.*

[22] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

[23] *Davis v. Louisville Mun. Sch. Dist.*, 2010 WL 290956, *2 (N.D. Miss. 2010) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)).

must not weigh evidence or draw from the facts legitimate inferences for the movant.[24] This Court is ever mindful that although a useful device, summary judgment "must be employed cautiously because it is a final adjudication on the merits."[25] "[S]uch caution is warranted particularly in the realm of Title VII claims."[26] But where the relevant facts are not in dispute, summary disposition is appropriate.[27]

**ANALYSIS**

Although Sanders brought four claims against Sailormen, in his response to the motion for summary judgment, he "concedes summary judgment on [his] claim that [he] was paid less than his white co-workers,"[28] and the remainder of his response focuses entirely on Sanders' contention that Sailormen's enunciated basis for termination is a pretext. This argument led Sailormen, in its reply brief, to suggest that Sanders has abandoned his discrimination claims.[29] Failure to address a claim results in the abandonment thereof.[30] Therefore, the Court considers the discrimination claims abandoned and evaluates only the retaliation claims.

---

[24] *Strong v. Dept. of Army*, 414 F. Supp. 2d 625, 628 (S.D. Miss. 2005).

[25] *Jackson v. Cain*, 865 F.2d 1235, 1241 (5th Cir. 1989).

[26] *Coleman v. CMH Homes, Inc.*, 2011 WL 198130, *3 (S.D. Miss. Jan. 20, 2011)

[27] *See, e.g.*, *Bennett v. GEO Group, Inc.*, 2011 WL 5864674, *5 (S.D. Miss. Nov. 22, 2011); and *Hubbard v. Yazoo City, Miss.*, 2011 WL 2692972, *6 (S.D. Miss. July 11, 2011).

[28] Plaintiff's Brief at 1 n.1.

[29] Defendant's Reply Memorandum in Support of Motion for Summary Judgment [Docket No. 42] (hereinafter "Defendant's Reply Brief") at 1.

[30] *In re Entringer Bakeries, Inc.*, 548 F.3d 344, 347 n.1 (5th Cir. 2008). *Melton v. Lock*, 214 Fed. Appx. 429 * 1 (5th Cir. Jan. 18, 2007) (citing *Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987); *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993)).

In order to make out a claim for retaliation under Title VII, a plaintiff must prove that "(1) [he] participated in a Title VII protected activity, (2) [he] suffered an adverse employment action by [his] employer, and (3) there is a causal connection between the protected activity and the adverse action."[31] Additionally, "the elements for establishing a prima fac[i]e case of retaliation under § 1981 are identical to those that must be established under Title VII."[32] The parties to the case at hand do not dispute the first two elements. The evidence leaves no room for a genuine issue as to whether Sanders participated in an activity protected by Title VII, namely, by filing an EEOC report.[33] Likewise, Sanders' termination is an obvious adverse employment action.[34] The only question is whether a genuine issue exists as to Sanders' contention that his EEOC charge led to his termination.

Sailormen argues that the only relevant, admissible evidence on which Sanders could rely to show causation is the temporal proximity of his termination and the filing of his EEOC complaint.[35] It is true that courts will look to "the temporal proximity between [an employee's] protected activity and [an employer's] adverse actions" when evaluating the issue of causation.[36]

---

[31] *Stewart v. Mississippi Transport Comm.*, 586 F.3d 321, 331 (5th Cir. 2009).

[32] *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).

[33] *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003) (overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)).

[34] *Davis*, 383 F3d at 319 (ultimate employment decisions include "hiring, granting leave, discharging, promoting, and compensating")

[35] Defendant's Brief at 16.

[36] *Schroeder v. Greater New Orleans Federal Credit Union*, 664 F.3d 1016, 1024 (5th Cir. 2011).

As Sailormen correctly notes, "temporal proximity alone is insufficient to prove but[-]for causation."[37] However, neither the presence nor the absence of temporal proximity is an outcome-determinative factor in a Title VII retaliation claim.[38]

In his response, Sanders counters by contending that although temporal proximity cannot support a finding of causation by itself, such evidence can withstand a motion for summary judgment when combined with the fact-finder's disbelief of the employer's proffered explanation.[39] Sailormen argues that the Fifth Circuit has never reached such a conclusion,[40] but that is not correct. In *Myers v. Crestone International, LLC*, which Sailormen cites in its own brief, the Fifth Circuit wrote: "We have held that the combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment."[41]

Likewise, in a much more recent case, the Fifth Circuit did have an opportunity to refute the very position now advanced by Sanders, and it declined to do so. In *Hernandez v. Yellow Transportation, Inc.*, which was decided after briefing on the instant motion had concluded, the Fifth Circuit addressed a Title VII plaintiff who, like Sanders, argued that "evidence of pretext, . .

---

[37] *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007).

[38] *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995) ("The timing of the adverse employment action can be a significant, although not necessarily determinative, factor."); *Nowell v. Illinois Cent. R. Co.*, 2011 WL 3625148, *12 (S.D. Miss. 2011) (Wingate, J.).

[39] Plaintiff's Brief at 2.

[40] Defendant's Reply Brief at 3.

[41] *Myers v. Crestone Int'l, LLC*, 121 Fed. Appx. 25, 28 (5th Cir. 2005).

. in addition to temporal proximity, is sufficient to establish 'but for' causation."[42] The Fifth Circuit ultimately found that the plaintiff had not shown causation, but it did so only after reviewing one by one the pieces of evidence which, in the plaintiff's view, warranted a finding of pretext.[43] Presumably, if the *Hernandez* Court disagreed with the theory that temporal proximity and disbelief of the employer's excuse could combine to stave off summary judgment, then it would have said so and saved itself the trouble of evaluating the evidence.

Moreover, Sailormen is incorrect in its assertion that temporal proximity is absent from the facts surrounding Sanders' retaliation claims. It is true that in 2001, when the Supreme Court observed that temporal proximity between a protected activity and an adverse employment action must be "very close" to support a conclusion of causation,[44] the high court explicitly relied in part on a Tenth Circuit decision holding that a three-month gap was too long to show temporal proximity.[45] However, just two months after the Supreme Court handed down that decision, the Fifth Circuit reiterated its position that a delay of four months will not prevent a plaintiff's showing of temporal proximity.[46] In the case at bar, both parties agree that roughly three months elapsed from the filing of Sanders' EEOC complaint to the date on which Sailormen terminated his employment. Therefore, Sanders has established temporal proximity.

---

[42] *Hernandez v. Yellow Transp., Inc.*, ___ F.3d ___, 2012 WL 400569 (5th Cir. Feb. 9, 2012)

[43] *Id.*

[44] *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

[45] *Id.* (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997)).

[46] *Tanner v. LSU Fireman Training Program*, 254 F.3d 1082, *3 (5th Cir. 2001).

However, that fact alone cannot save Sanders[47] in the face of two important intervening events. In *Raggs v. Mississippi Power & Light Co.*,[48] the Fifth Circuit held that a plaintiff's Title VII and Section 1981 retaliation claims could not stand in the face of an "intervening positive evaluation" between the filing of his EEOC complaint and his layoff[49] As Judge Montalvo of the Western District of Texas explained in 2007, an intervening positive event such as the evaluation in *Raggs* "attenuated" the link between the Title VII-protected activity and the adverse employment action.[50] In Sanders' case, there is no dispute that in the wake of his EEOC complaint, Sailormen gave him a raise of roughly 50 percent.[51]

And then, in November 2009, another intervening event arose: Sanders' positive drug test. Between these two intervening events, the record leaves no room for debate that, in the immediate wake of his EEOC complaint, Sanders' relationship with Sailormen did not deteriorate. The ills of which Sanders occurred manifested themselves only after his positive drug test. Temporal proximity aside, these intervening events so clearly attenuate the Title VII-protected activity and the adverse employment action that, lacking any other evidence to the contrary, no genuine issue of material fact exists to dispute Sailormen's legitimate basis to terminate Sanders.

---

[47] *See supra* at n.37.

[48] *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463 (5th Cir. 2002).

[49] *Id.* at 471.

[50] *Silva v. Chertoff*, 512 F. Supp. 2d 792, 823 (W.D. Tex. 2007).

[51] Sailormen avers that it raised Sanders' hourly pay from $12.50 to $18.00. Defendant's Brief at 6-7. But according to Sanders, the raise brought his pay from $12.00 to $18.50 per hour. Plaintiff's Brief at 3. Either way, the difference is one only of degree.

The Court should not be understood to mean that a set of facts containing episodes that can be framed as "intervening events" can never comprise a triable Title VII retaliation claim. If Sanders had presented other evidence, then a genuine issue as to Sailormen's motives might exist. But he has not done so. Although Sanders contends that Sailormen's explanation has evolved over time,[52] that argument is unpersuasive, and Sanders is left claiming chiefly that Sailormen has covered its retaliatory tracks by asserting that Sanders failed to produce a negative drug test *within* 30 days of his suspension.[53] But Sanders has offered no evidence of similarly situated employees who were allowed to produce negative test results outside a 30-day suspension, and without such facts, Sanders cannot prove that Sailormen's construction of the Return to Work policy is a pretext for retaliation.[54] At best, Sanders' argument is that Sailormen misconstrued its own policy, but that fact is not proof of Title VII-cognizable retaliation.

Finally, Sanders argues that Sailormen has been evasive regarding the identity of the decision-maker who decided to terminate Sanders. In Sanders' view, the decision was made by Momenzadeh, who – according to Sanders – harbored animus toward Sanders after the EEOC

---

[52] According to Sanders, Sailormen told him that he was being terminated because of the failed drug test, but that later, "Sailormen gave an evasive answer to key interrogatories," namely "that the plaintiff had violated its drug testing policy without any specifics." Plaintiff's Brief at 5. Sanders' brief cites no specific interrogatory, but presumably, he refers to Defendant's Responses to Plaintiff's First Set of Interrogatories, which is attached to his brief as Exhibit 2C [Docket No. 38-6]. When asked at Interrogatory No. 10 why Sanders was terminated, Sailormen responded, in part: "Plaintiff was terminated because Sailormen, Inc. concluded that his employment was no longer in its best interests. Plaintiff's testing positive for illegal drug use, and his failure to comply with the requirements of Defendant's Return to Work policy, contributed to this conclusion." The suggestion that this response does not coincide with Sailormen's previous explanation is not compelling.

[53] *See supra* at 3.

[54] *See Strong*, 482 F.3d at 807.

complaint and challenged the quality of Sanders' character.[55] But animus alone cannot establish causation in a Title VII case. "[F]or a statement exhibiting animus to prove pretext, the statement must: (1) demonstrate a discriminatory motivation, and (2) be made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker."[56] An attack solely against one's character does not demonstrate a discriminatory motivation. And to the extent that Momenzadeh admitted to harboring animus against Sanders, the decision to give Sanders a significant pay raise attenuates any causal link under the facts of this case.

## CONCLUSION

Sanders has failed to prove the causation elements of his Title VII and Section 1981 retaliation claims. Sanders is correct that evidence of pretext and temporal proximity can combine to satisfy the element and ward off summary judgment, and the three-month lapse between his Title VII-protected activity and his adverse employment action is not so lengthy as to prove an absence of temporal proximity. However, intervening events attenuate the two episodes so clearly that, on the facts presented in the record, no reasonable jury could find for Sanders.

Therefore, Sailormen's motion for summary judgment is granted. A Final Judgment

---

[55] Plaintiff's Brief at 7-8. In the excerpts of his deposition provided to the Court, Momenzadeh recalled telling Sanders at the mediation that "I was disappointed he didn't come to me with his need about the salary, because I always try to help people." Exhibit 3 to Plaintiff's Brief [Docket No. 38-8] at 15. In his own deposition, Sanders recalled Momenzadeh's reaction at the mediation as "[n[o]t expecting me to have an attorney there with me, and he kind of got upset about it; and he was talking about how he thought my character was better. And that was it." Exhibit 3 [Docket No. 33-5] at 172.

[56] *Smith v. Southwestern Bell Telephone Co.*, 2012 WL 28256, *3 (5th Cir. Jan. 5, 2012) (quotations omitted).

effectuating that holding will be entered on this date.

    SO ORDERED this Twenty-Eighth day of February 2012.


                                                     /s/ *Carlton W. Reeves*
                                                 Hon. Carlton W. Reeves
                                               United States District Court Judge